IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARMA ENTERPRISES, INC.,**
    Plaintiff,

vs.

**ZURICH AMERICAN INSURANCE CO.,**
    Defendant.

No. 15-CV-0172-MV-KBM

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Zurich American Insurance Company's Amended Motion for Summary Judgment on the Ground that Unambiguous Policy Terms Bar Coverage [Doc. 18]. Plaintiff Carma Enterprises, Inc. timely responded [Doc. 26] and Defendant replied [Doc. 27]. The Court having considered the Motion, briefs, relevant law, and being otherwise fully informed, finds that Zurich American Insurance Company's Amended Motion for Summary Judgment on the Ground that Unambiguous Policy Terms Bar Coverage [Doc. 18] is well-taken and therefore will be **GRANTED.**

### BACKGROUND

Ultimately, this case presents a question of contract interpretation. Prior to the incidents that form the basis for the instant suit, Defendant Zurich American Insurance Company ("Zurich") "issued commercial general insurance policies to Carma." Doc. 18 ¶ 3. *See also* Doc. 26 at 1 ("Plaintiff does not dispute the factual statements in the 'Statement of Undisputed Material Facts.'"). At the time that

Plaintiff purchased the policy, "Defendant knew that Plaintiff was in the business of lending." Doc. 26 ¶ 2. The most recent applicable policy bears the numerical identifier CPO 9672574-15 and was in effect from July 15, 2013 through July 15, 2014. Doc. 18 ¶ 9.

Underlying Plaintiff in this suit, Arlene Peina, "filed a class action in the Eleventh Judicial District Court, McKinley County, against Carma." *Id.* ¶ 1. As is pertinent here, Peina alleged that Carma "loaned $200 to her" and when she "made her first payment, Carma offered to give her $50 more to 'renew' the loan." *Id.* The terms of this extremely high-interest loan "required five monthly payments of $90 (resulting in a total of $450)." *Id.* Peina evidently missed one or more of these payments; in response, "non-lawyer employees of Carma filed suit and a motion for default judgment." *Id.* Accordingly, the class action suit alleges "that Carma 'knew' it was breaking the law" by permitting or inducing its employees to engage in the unauthorized practice of law. Doc. 26 ¶¶ 11-15.

In Defendant's view, "Carma had prior notice from the court that it should not have employees file motions in Magistrate Court." Doc. 18 ¶ 1. By contrast, Carma insists that the Gallup Magistrate Court sent Plaintiff a letter in which it asked Plaintiff "identify which employees would represent Plaintiff in collection actions," which Plaintiff understood "to mean that non-attorney employees could represent Plaintiff in collection actions in Gallup Magistrate Court." Doc. 26 ¶¶ 4-5. Accordingly, Plaintiff explains, the "CEO and general manager relied upon the

letter from the Court and were both unaware that non-attorney employees could not appear in Magistrate Court." *Id.* ¶ 7.

Whatever the case, "Zurich's adjustor Stephen M. Wojcik sent Carma a letter denying coverage for litigating the underlying claim." Doc. 18 ¶ 11. By way of explanation, Wojcik wrote that the class action complaint "does not seek any relief on the basis of" an occurrence that was covered by the policy, emphasizing an exclusion in the policy for liability arising from the provision of financial services. *Id.* ¶ 12. Consequently, "Carma filed [the instant] complaint against Zurich, alleging breach of contract and bad faith in failing to defend Carma in the underlying case." *Id.* ¶ 13. Defendant now requests that the Court enter summary judgment in its favor.

## DISCUSSION

### I. Motion For Summary Judgment

The standard on an ordinary motion for summary judgment is, by now, easily recited: "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lenox MacLaren Surgical Grp. v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). For these purposes, an issue "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and a fact is material if under the substantive law it is essential to the proper disposition of the claim." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (internal quotation marks omitted).

Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). In evaluating the Motion, this Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014).

II.   **Insurance Coverage and the Duty to Defend**

Jurisdiction in this case is predicated on the diversity of the Parties pursuant to 28 U.S.C. § 1332; accordingly, the Court applies the substantive law of New Mexico. *Pehle v. Farm Bureau Life Ins. Co., Inc.*, 397 F.3d 897, 900 (10th Cir. 2005) ("Because our jurisdiction is based on diversity of citizenship, and because the factual backdrop of this dispute occurred in Wyoming, we apply the substantive law of Wyoming."). New Mexico insurance law, in turn, provides that "the 'obligation of a liability insuror [sic] is contractual and is to be determined by the terms of the policy.'" *Farmers All. Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980) (quoting *Safeco Insurance Co. of America, Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977)). *See also, e.g.*, *Gallegos v. Pueblo of Tesuque*, 46 P.3d 668, 679 (N.M. 2002) ("Generally, the goal of contract interpretation is to 'ascertain the intentions of the contracting parties.") (internal quotation marks omitted); *Bernalillo Cty. Deputy Sheriffs Ass'n v. Cty. of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992) ("We construe unambiguous insurance contracts in their usual and ordinary sense unless the language of the policy requires something different."). Thus, the terms of the insurance policy dictate the extent of an insurer's obligation. *See Pulte Homes of*

*New Mexico, Inc. v. Indiana Lumbermens Ins. Co.*, -- P.3d --, 2015 WL 9263675, at *3 (N.M. Ct. App. Dec. 17, 2015) ("An insurer's obligation is a matter of contract law and must be determined by the terms of the insurance policy.") (internal quotation marks omitted).

"In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law." *Comput. Corner, Inc. v. Fireman's Fund Ins. Co.*, 46 P.3d 1264, 1266 (N.M. Ct. App. 2002). Even so, the "court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 981 F. Supp. 2d 981, 1004 (D.N.M. 2013). *See also Richardson v. Farmers Ins. Co. of Arizona*, 811 P.2d 571, 572 (N.M. 1991) ("Absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted.") (internal quotation marks omitted). That is, "[u]ltimately, a court construing an insurance policy in accordance with New Mexico law must attempt to put itself in the shoes of a hypothetical Everyman insured," but cannot inject ambiguity where none exists. *Taos Ski Valley, Inc. v. Nova Cas. Co.*, -- F. Supp. 3d --, 2015 WL 9597908, at *2 (D.N.M. Dec. 30, 2015). However, in arriving at its interpretation, "a court may consider extrinsic evidence to determine whether the meaning of a term or expression contained in the agreement is actually unclear." *Hartford Fire Ins. Co.*, 981 F. Supp. 2d at 1005 (internal quotation marks omitted).

Consistent with this framework, "[e]xclusions in insurance contracts shall be enforced as long as their meaning is clear and they do not conflict with statutory law." *W. Heritage Bank v. Fed. Ins. Co.*, 938 F. Supp. 2d 1219, 1224 (D.N.M. 2013) (Vázquez, J.) (internal quotation marks omitted). Of course, an "exclusion does not conflict with an insurance policy's insuring agreement simply because it affords less or different coverage as compared with what the policy would provide without the exclusion; that is the very purpose of an exclusion, to restrict the scope of the policy beyond what would otherwise be covered." *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 650 (N.M. 2012). To hold otherwise would, in effect, nullify all exclusions in insurance agreements.

With respect to an insurer's duty to defend, the New Mexico Supreme Court has explained that if a "'injured third party's complaint shows that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy.'" *W. Heritage Bank*, 938 F. Supp. 2d at 1223 (quoting *Am. Emp'rs' Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (1973)). That is, the "duty to defend arises out of the nature of the allegations in the complaint," such that if "the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required." *City of Albuquerque v. BPLW Architects and Eng'rs, Inc.*, 213 P.3d 1146, 1150 (N.M. Ct. App. 2009) (internal quotation marks omitted).

**III.     The Plain Terms of the Policy Bar Recovery**

The undisputed material facts before the Court leave no doubt that the insurance policy at issue, by it plain terms, excludes coverage for a variety of losses incurred from "the rendering of or the failure to render financial services by any insured to others." Doc. 18-1 at 21.  Among the activities encompassed by this "financial services" exception are "[l]ending, or arranging for the lending of, money, including credit card, debit card, leasing or mortgage operations or activities or interbank transfers." *Id.*  A plain reading of this exclusion, taken in conjunction with the allegations in the underlying complaint makes patent that the conduct at issue falls outside of the terms of the policy and, therefore, did not trigger Defendant's duty either to defend or to indemnify.  Specifically, the allegations in the underlying complaint all arise out of Carma's practice of issuing loans and using non-attorney employees to bring collection actions when debtors defaulted; it is obvious that such activity falls within the ambit of the financial services exclusion. *Compare* Doc. 18 ¶¶ 1-2 *with* Doc. 18-1 at 2.

Indeed, Plaintiff does not dispute the existence or plain meaning of this language; rather, Carma urges that the Court should "examine[] the parties' reasonable expectations" and ignore the obvious interpretation of the contract because "[n]o sane businessman would pay thousands of dollars to purchase insurance that includes an exclusion that completely vitiates the coverage." Doc. 26 at 16.  However, as Defendant observes, this argument collapses under even cursory scrutiny.  That is, although the policy does not protect Plaintiff from losses

7

associated with its primary business activity, the policy does, for example, insure against a variety of ordinary liabilities or losses, such as those caused by natural disasters or accidents on the premises. *See* Doc. 27 at 7. It is simply untrue that the "interpretation given by Defendant eliminates all insurance, meaning Defendant has taken [Carma's] money and sold [it] nothing." Doc. 26 at 17.

Moreover, Carma's argument proves too much; under Plaintiff's theory, no rational law firm would ***ever*** purchase a commercial general liability insurance policy because such a policy did not ***also*** provide professional malpractice coverage. While the possibility of a malpractice suit certainly poses a risk to attorneys worthy of insurance coverage, so too does the prospect of a client falling down the stairs in the office, or of fire destroying valuable files; it simply does not follow that the only insurance reasonably required by a commercial enterprise would necessarily encompass their primary revenue-generating activity. Indeed, as evinced by Defendant's reply brief, "Professional services exclusions similar to the financial services exclusion have been upheld in New Mexico." Doc. 27 at 6 (citing *Millers Cas. Ins. Co. of Texas v. Flores*, 876 P.2d 227, 231-32 (N.M. 1994)). Accordingly, the Court finds that the unambiguous policy terms make clear that the allegations in the underlying complaint fall outside the ambit of coverage; therefore, Defendant had neither a duty to defend, nor to indemnify. *See Western Heritage Bank*, 938 F. Supp. 2d at 1223. *See also Hartford Fire Ins. Co.*, 981 F. Supp. 2d at 1005 ("The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court.").

8

This conclusion is fatal to both Plaintiff's claim for breach of contract and claim for bad faith. *See* Doc. 1-2 ¶ 17 ("Defendant breached the policy by failing to indemnify Plaintiff, defendant Plaintiff and otherwise agree to pay any loss suffered by Plaintiff under its claim"). *See also id.* ¶ 23 ("By denying Plaintiff's claim, Defendant, knowing that it had no legal justification for doing so, purposefully forced Plaintiff to file this Complaint in order to obtain the insurance proceeds to which it is entitled."). That is, the Court's finding that Defendant was not obligated to defend or indemnify Plaintiff based on the allegations in the underlying complaint obviates the possibility of recovery on the only two claims in Plaintiff's complaint. Therefore, the undisputed material facts make clear that Defendant Zurich is entitled to judgment as a matter of law as to both of Plaintiff Carma's claims.

## CONCLUSION

For the foregoing reasons, on Zurich American Insurance Company's Amended Motion for Summary Judgment on the Ground that Unambiguous Policy Terms Bar Coverage [Doc. 18] is **GRANTED. Judgment will be entered by a separate order.**

Dated this 26th day of February, 2016.

_____
**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE

David R. Jordan
**Law Offices of David R. Jordan, PC**
Gallup, New Mexico
*Attorney for Plaintiff*

James H. Johansen, *et al.*
**Butt Thornton & Baehr, PC**
Albuquerque, New Mexico
*Attorneys for Defendant*

9